## PHILLIPS v. NORTON et al.

1. In an action to restrain proceedings under a judgment, an allegation that plaintiff was informed and believed that defendant claimed to own the judgment is prima facie sufficient as an allegation of ownership, in the absence of a motion to make more certain.

2. Under Justice Code, § 13, providing that the summons must contain a sufficient statement of the cause of action to apprise defendant of the nature of the claim against him, a statement in a summons that plaintiff claims to recover on account for services will not warrant a default judgment for laborer's wages.

3. Defendant in a justice's court action may assume an ordinary judgment will be entered, and, not being required to examine the judgment or appeal, may show the judgment was not authorized by the summons and complaint in a suit to restrain its enforcement.

4. Under Justice Code, § 81, authorizing the issuance of execution for the enforcement of a judgment within five years, and Code Civ. Proc. §§ 329, 325, requiring leave of court to issue execution after five years, and providing for the transfer of a justice's judgment by certified transcript to the circuit court the transcript of the judgment must be filed in the circuit court within five years, and such filing does not extend the time for issuing execution.

(Opinion filed December 7, 1904 )

Appeal from circuit court, Minnehaha county; Hon. JOSEPH W. JONES, Judge.

Action by Charles L. Phillips against John Norton and another to restrain the enforcement of a judgment. From an order overruling demurrers to the complaint, defendants appeal. Affirmed.

*Joe Kirby*, for appellants.

*Davis, Lyon & Gates*, for respondent.

CORSON, P. J.   This is an appeal from an order overruling defendants' separate demurrers to the complaint.   The demurrers were interposed upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The only question, therefore, presented on this appeal, is as to whether or not the demurrers should have been sustained by the court below.

It is alleged, in substance, in the complaint:   That R. J. Huston was the duly elected and qualified sheriff of Minnehaha county.   That on January 24, 1891, in justice court before R. C. Hawkins, a police justice, a judgment was rendered by default in favor of John Norton and John J. Murry against the plaintiff in this action, Charles L. Phillips, for the sum of $53 damages and $7.50 costs, which judgment was "rendered and entered for laborer's wages" in the case before said justice, wherein John Norton and John J. Murry were plaintiffs, and the plaintiff was a defendant.   That Joe Kirby was the attorney who procured the said judgment.   That a transcript of said judgment was on October 28, 1901, filed in the office of the clerk of the circuit court in and for Minnehaha county.   That on or about November 4, 1901, an execution was issued upon said judgment out of the office of the clerk of said circuit court, and placed in the hands of the sheriff of said county, and which execution did not and does not recite that it is issued upon a judgment for laborer's wages.   That said sheriff, by virtue of said execution, levied upon certain personal property of the plaintiff.   That on November 11, 1901, the plaintiff caused

an affidavit and schedule of his property to be served upon said sheriff, which shows that plaintiff had no property except that which is absolutely exempt, and personal property claimed as exempt not exceeding in value $500. That, after the said claim for exemption had been served upon said sheriff, the plaintiff was informed by him and Joe Kirby that said judgment was for laborer's wages, and said sheriff was directed by said Kirby to proceed under said execution; and that said sheriff still holds the said execution, and threatens to take and sell the property of this plaintiff thereunder which plaintiff claims to be exempt as aforesaid. That at the time of the rendition of the said judgment this plaintiff was indebted to Norton & Murry in the sum of $53 for "repairs done by, merchandise bought of, and blacksmithing done by said Norton & Murry for the plaintiff," but that the plaintiff was never indebted to the said Norton & Murry, or either of them, upon an account for laborer's wages. That the summons on file in said justice court action contains the following as the cause of action and demand of judgment therein: "You are hereby summoned to appear before me, at my office, in the city of Sioux Falls, in said county, on the 24th day of January, A. D. 1890, at 8 o'clock a. m., standard time, to answer the complaint of the above named plaintiff, who claims to recover of you the sum of fifty-three dollars and ———— cents, being sum now due from you to plaintiffs on account for services heretofore rendered you by plaintiffs at your special instance and request." "And you are notified that if you fail to appear and answer, as above required, said plaintiff will take judgment against you for fifty-three dollars, together with costs and disbursements of this action." That there was filed in said justice

court a statement of account due from this plaintiff to the said Norton & Murry, a copy of which is as follows:

Sioux Falls, South Dakota, Decbr. 10th, 1890.

Mr. Chas. Phillips,

    In Account with Norton & Murry.

  1890.

  Sept. 11.   To Balance...... ................................. $52 45

The oral complaint entered in the docket of the police justice in said case is as follows: "Plaintiffs appeared by Joe Kirby, their attorney, and made oral complaint for fifty-three dollars ($53) due on account for services heretofore rendered to the defendant by the plaintiffs at the defendant's special request; that no allegation was made in said justice's summons nor in said complaint that the cause of action was based upon a claim for laborer's wages and that in neither said justice's summons nor in said complaint was there a prayer for a judgment for laborer's wages; that this plaintiff did not answer said summons and complaint in said justice court, nor either of them, and that he never appeared in said action in any manner; that this plaintiff not having any knowledge of said judgment, nor of any judgment against him in favor of said Norton & Murry, and supposing that he was making such payments on the account due them from him, paid to John J. Murry, one of the plaintiffs in said action, upon the indebtedness due by him to the said Norton & Murry, the aggregate sum of thirty-five dollars ($35) from time to time during the years 1891, 1892, 1893, and 1894."

It is further alleged: "That plaintiff is informed and believes that the defendant Joe Kirby now claims to own said judgment." Wherefore the plaintiff demands judgment that the said justice judgment and transcript thereof, and the

entry and docket thereof in the office of the clerk of the circuit court, be vacated and set aside, and that the execution issued thereon be canceled and set aside, and that during the pendency of the action the defendants, their agents and attorneys, and said sheriff, be restrained from proceeding under said execution and from enforcing the said judgment, and that the said sheriff and his successors in office be perpetually enjoined and restrained from proceeding under said execution or any execution issued upon said judgment.

It is contended by the appellant Kirby that the complaint fails to show that he is a proper party to the action; that the allegation in the complaint "that plaintiff is informed and believes that the defendant Joe Kirby now claims to own said judgment" is insufficient as an allegation that he was such owner. It is insisted by the respondent, in support of the ruling of the court below, that the attorney was a necessary party for the reason that the object of the action was to restrain him, as well as the plaintiffs in the action in the justice's court, from proceeding to collect the judgment, and that the allegations in the complaint that the plaintiff was informed and believed that the defendant claimed to own the said judgment were sufficient to show that he was a proper party as against a general demurrer. The latter allegation was undoubtedly subject to a motion to make more certain and definite, but, in the absence of such a motion, we are of the opinion that it was prima facie sufficient as an allegation of ownership on the part of Kirby.

It is further insisted by the respondent that the complaint contains facts sufficient to constitute a cause of action for the reasons that "(1) the statement contained in the summons is

insufficient to sustain a judgment for laborer's wages; (2) there is a fatal variance between the oral complaint and the judgment; (3) the execution was not seasonably issued, without leave of court, more than five years having elapsed after the rendition of the judgment in the justice court before the transcript was taken to the circuit court; (4) a court of equity is the proper tribunal to grant relief in this case."

It will be observed that the statement in the summons in the justice's court of plaintiff's cause of action was that the plaintiff claimed to recover "on account for services heretofore rendered you by plaintiff at your special instance and request," and, if he failed to appear and answer the complaint, judgment would be taken against him for $53, together with costs and disbursements of this action. It will be observed from this statement in the summons that the defendant was not notified that judgment for laborer's wages would be entered against him." The judgment, being therefore for laborer's wages, gave the plaintiff greater relief than he was entitled to under the statement in the summons. Section 13, Justice Code, provides that the summons must contain "a sufficient statement of the cause of action in general terms to apprise the defendant of the nature of the claim against him." It will thus be seen that the statement must be sufficient to fully apprise the defendant of the nature of the claim made against him, and of the judgment that will be taken against him, in order that he may determine intelligently whether or not it will be necessary for him to appear and defend the action; and where the defendant does not appear, and allows the judgment to be taken by default, the plaintiff is not authorized to enter a judgment for any relief not specified in or clearly

contemplated by the notice contained in the summons. A reasonable and fair inference that the defendant was entitled to draw from the summons served upon him in the justice court action was that the plaintiff claimed to recover an ordinary judgment for $53, and that upon his default in appearing in said action such ordinary judgment would be entered for that amount. It is clear, therefore, that the judgment in this case "rendered and entered for laborer's wages" was not authorized by the summons, and that portion of the judgment was a nullity. There is nothing in the oral complaint made in the justice's court that authorized the entry of judgment for laborer's wages, or that in any manner tended to support such a judgment. This complaint, as will be noticed, claims that there is due plaintiffs "on account for services" the sum of $53.

The plaintiff in this action, as a defendant in the action in the justice's court, had the right to assume that the ordinary judgment for the amount claimed to be due would be rendered and entered, and he was not required to examine the said judgment or take an appeal therefrom within the 30 days in which appeals are allowed by the Justice Code, and, not having appealed, he is entitled to show that the judgment was not authorized by the summons or complaint in an action brought on the equity side of the court, for the purpose of restraining the enforcement of the same by the defendants.

It will also be noticed by the complaint that the judgment in the justice's court was entered on the 24th day of January, 1891, and that the transcript of the justice court judgment was not filed in the circuit court until October 28, 1901, more than 10 years after the judgment was entered, and that no execution had been issued upon the

judgment until the same was transcripted to the circuit court. Section 81 of the Justice Code provides that: "Execution for the enforcement of a judgment of a justice's court may be issued by the justice who entered the judgment, or his successor in office, on the application of the party entitled thereto, at any time within five years from the entry of judgment except when it has been taken to the circuit court on error or appeal, or docketed therein." It will be observed that by this section no authority is given to the justice to issue an execution after the lapse of five years, and section 329, Code Civ. Proc., provides that "after the lapse of five years from the entry of judgment an execution can be issued only by leave of the court upon motion with personal notice to the adverse party." Section 325, Code Civ. Proc., provides that: "A justice of the peace on the demand of the party in whose favor he shall have rendered a judgment, must give a certified transcript thereof, which may be filed in the office of the clerk of the circuit court of the county or subdivision in which the judgment was rendered, and such clerk must thereupon enter such judgment in the judgment book, and upon the judgment docket, and, from the time of docketing thereof, it becomes a judgment of such circuit court, and a lein upon real property, and a certified transcript of the docket of such judgment may be filed and the judgment docketed accordingly, in any other county or subdivision, with the like effect in every respect as if the judgment had been rendered in the circuit court where such judgment is filed."

It will be noticed by this section that there is no limitation of time as to when said transcript may be made by the justice court and filed in the circuit court; but, considering these three

sections together, it is quite clear that the transcript of the justice's judgment must be made and filed with the clerk of the circuit court within five years after the entry of the judgment, and that filing the transcript in the circuit court does not extend the time in which an execution may be issued on the judgment. In the case at bar the judgment had become dormant before it had been transmitted to the circuit court, and filing the transcript in that court could not revive it. Mr. Freeman, in his work on Executions, in speaking of a judgment transcript which has been filed in the higher court, says: "This does not transform the original judgment into a judgment of the higher court except for the purpose of issuing and controlling execution. * * * The filing of the transcript does not prolong the life of the original judgment. The time at which the right to execution will expire must be computed from the rendition of the judgment and not from the filing of the transcript." Section 14, 1 Freeman on Execution. In Farmer's State Bank v. Bales, 64 Neb. 870, 90 N. W. 945, the Supreme Court of Nebraska held, as appears by the headnote, that: "A judgment rendered by a justice of the peace, a transcript of which is duly filed and docketed in the office of the clerk of the district court, becomes dormant where no execution thereon is issued after five years from the date of its rendition, and the filing of a transcript of such judgment in the district court will not have the effect of keeping it alive for five years from the date of such filing." In Kerns v. Graves, 26 Cal. 156, the Supreme Court of California held, under a statute quite similar, if not identical, with our own, that: "The filing and docketing of a transcript of a judgment rendered by a justice of the peace in the office of the clerk of

the county does not empower the clerk of the court in which it is filed and docketed to issue an execution on the same after five years have elapsed from the date of its rendition." In that case the court, in its opinion, says: "The only question presented by the appellant is whether the clerk has power to issue an execution upon a judgment of the justice of the peace after the expiration of five years from the rendition of the judgment." The court, after stating the statute in effect, which is, as we have before stated, quite similar to the statute of this state, says: "Neither the clause cited nor any portion of the section prescribes the time within which the execution may be issued, but the object of the section is to define the manner of making the judgment a lien upon the real estate of the debtor, and to prescribe by whom execution in satisfaction of the judgment shall be issued. * * * Section 600 of the practice act [St. 1850, p. 146, c. 5] provides that an execution may be issued upon a judgment rendered by a justice of the peace, within five years from the time of its entry, and this provision amounts to a limitation, and negatives, by implication, the right to issue the execution after that period. The limitation applies alike to all executions authorized by the act to be issued upon those judgments. * * * The docketing of the judgment neither gives it new vitality nor prolongs its existence." Dieffenback v. Roch, 112 N. Y. 621, 20 N. E. 560; Young v. Remer, 4 Barb. 442.

As the plaintiff was not precluded by the recitals in the judgment from claiming the property to be exempt, and as the execution was issued without any authority of law, it is clear that the facts alleged in the complaint are sufficient to entitle the plaintiff to substantial relief, and that the demurrer was properly overruled. The order appealed from is affirmed.